STATE OF NORTH CAROLINA EX REL. UTILITIES COMMISSION; DUKE POWER COMPANY, APPLICANT; RUFUS L. EDMISTEN, ATTORNEY GENERAL, DAVID SPRINGER, CONSUMERS' CENTER OF NORTH CAROLINA, INC., YADKIN RIVER COMMITTEE, AND HIGH ROCK LAKE ASSOCIATION, INC., INTERVENORS.

No. 7710UC836

(Filed 11 July 1978)

1. **Electricity § 2.5; Utilities Commission § 15— electric generating facility—certificate of public convenience and necessity**

 The purpose of the statute requiring a certificate of public convenience and necessity from the Utilities Commission before an electric generating facility can be built is to prevent costly overbuilding, and environmental concerns are generally left to other regulatory agencies except as they affect the cost and efficiency of the proposed generating facility. G.S. 62-110.1.

2. **Utilities Commission § 51— appellate review of Commission order**

 Where actions of the Utilities Commission do not violate constitutional provisions or exceed its statutory authority, appellate review of an order of the Commission is limited to errors of law, arbitrary action, or decisions unsupported by competent and substantial evidence.

3. **Electricity § 2.7; Utilities Commission § 15— electric generating facility—certificate of public convenience and necessity**

 The Utilities Commission's issuance of a certificate of public convenience and necessity to Duke Power Company for the construction of a nuclear powered generating facility for electricity on the Yadkin River was supported by findings of fact based upon competent evidence, and the Commission adequately considered the effect of the project on the river and surrounding property below the proposed plant.

APPEAL by Intervenor, High Rock Lake Association, Inc., from the North Carolina Utilities Commission. Order entered 4 March 1977. Heard in the Court of Appeals 29 June 1978.

On 16 July 1975, Duke Power Company applied to the North Carolina Utilities Commission for a Certificate of Public Conven-

ience and Necessity for the construction of the Perkins Nuclear Station in Davie County. High Rock Lake Association, Inc., Consumers' Center of North Carolina, Inc., and Yadkin River Committee were allowed to intervene in the proceeding. Only High Rock Lake Association, Inc. appealed. Appellant is a nonprofit corporation organized to promote the recreational benefits and property values around High Rock Lake, which is located downstream on the Yadkin River from the proposed plant site.

Hearings were held on the application in October, 1975, January, 1976, and February, 1977. Duke, the Utilities Commission, the intervenors, and other interested parties put on evidence from which the Commission made findings of fact and conclusions of law. The evidence put on by Duke and the Commission staff largely related to the needs for power in the area, the suitability of the Perkins' site for a generating plant, the economics of nuclear power production as opposed to coal fired generation, and the costs of building cooling towers as opposed to redesign costs. The appellant offered evidence tending to show that High Rock Lake is a shallow lake and, therefore, very sensitive to changes in water level, that the consumption of large amounts of water by evaporation from the cooling towers proposed for the Perkins Nuclear Station would adversely affect the water level in the lake downstream, and that any major reduction in the lake level would adversely affect property values around it. Based on, among other things, Duke's and the Commission staff's analysis of future requirements, the Commission found that the public convenience and necessity requires Duke to construct almost 4,000 MW of additional electric capacity before 1989. It also found that the proposed site and design of the Station are most appropriate, considering public convenience and necessity, and the total environmental impact. Among the facts in evidence to support these findings were data concerning Duke's load center, the costs of alternative sources of power and sites, the costs both in time and money of alternative designs, and the projected environmental impact of the plant.

The Commission granted a certificate of public convenience and necessity to Duke for the construction of the Perkins Nuclear Station subject to conditions imposing limitations upon use of water from the Yadkin River. The conditions were the same as those imposed by a prior agreement between Duke and the En-

vironmental Management Commission and included periodic review by that Commission. The certificate was also specifically subject to Duke's receiving construction and operating licenses from the Nuclear Regulatory Commission and the North Carolina Department of Natural and Economic Resources.

*Special Deputy Attorney General Jesse C. Brake and Assistant Attorney General Dan C. Oakley, for Attorney General Edmisten.*

*William G. Pfefferkorn, for intervenor appellant.*

*Steve C. Griffith, Jr., William L. Porter and John E. Lansche; Kennedy, Covington, Lobdell & Hickman, by John M. Murchison, Jr., attorneys for applicant appellee.*

VAUGHN, Judge.

[1] Duke made its application for a certificate of public convenience and necessity under G.S. 62-110.1. This regulatory statute was enacted in 1965 to help curb overexpansion of generating facilities beyond the needs of the service area. To this end, the General Assembly used the term "public convenience and necessity" to define the standard to be applied by the Utilities Commission to proposed facilities. In reviewing the Commission's application of the standard in other regulatory actions, the Court has held that public convenience and necessity is based on an "element of public need for the proposed service." *State ex rel. Utilities Comm'n. v. Carolina Tel. & Tel. Co.*, 267 N.C 257, 270, 148 S.E. 2d 100, 110 (1966); *see also State ex rel. Utilities Comm'n. v. Southern Coach Co.*, 19 N.C. App. 597, 199 S.E. 2d 731 (1973), *cert. den.*, 284 N.C. 623, 201 S.E. 2d 693 (1974); *State ex rel. Utilities Comm'n. v. Queen City Coach Co.*, 4 N.C. App. 116, 166 S.E. 2d 441 (1969). Moreover in 1975, an "act to establish an expansion policy for electric utility plants in North Carolina, to promote greater efficiency in the use of all existing plants, and to reduce electricity costs by requiring greater conservation of electricity" was enacted by the General Assembly, 1975 Sess. Laws Ch. 780. This act, codified as G.S. 62-110.1(c)-(f), directs the Utilities Commisssion to consider the present and future needs for power in the area, the extent, size, mix and location of the utility's plants, arrangements for pooling or purchasing power, and the construction costs of the project before granting a cer-

tificate of public convenience and necessity for a new facility. From these statutes and the case law, it is clear that the purpose of requiring a certificate of public convenience and necessity before a generating facility can be built is to prevent costly over-building. Environmental concerns were generally left to other regulatory agencies, except as they affect the cost and efficiency of the proposed generating facility.

[2] Upon appeal from orders of the Utilities Commission, the authority of this Court to reverse or modify an order of the Commission or to remand the matter for further proceedings is limited by G.S. 62-94. Where the Commission's actions do not violate constitutional provisions or exceed its statutory authority, then appellate review is limited to errors of law, arbitrary action, or decisions unsupported by competent and substantial evidence. The Court must look to the findings of fact and conclusions of the Commission and determine if the Commission has considered the factors required by law and if the findings of fact necessary to support granting of the certificate are supported by substantial evidence in view of the whole record. *See State ex rel. Utilities Comm'n. v. VEPCO*, 285 N.C. 398, 206 S.E. 2d 283 (1974).

[3] Appellant does not except to the Commission's finding that the area served by Duke Power Company will need the additional generating capacity for its service area operation between 1985 and 1989. The Commission made this finding after "considering the possibility of available purchase power and pooling agreements." Neither does the appellant except to the Commission's approval of the construction cost, nor to findings that the construction will be consistent with the Commission's plan for the expansion of electric generating capacity and that the proposed Perkins Nuclear Station is most appropriate in view of the area's economic and social needs. Instead, appellant's assignments of error relate to alleged flaws in the design and placement of the facility. The High Rock Lake Association contends that the Perkins Nuclear Station as projected will consume too much water and that it will pollute the Yadkin River or otherwise adversely affect the river below the power plant. We point out first that these concerns, though not at the heart of the regulatory process as the Utilities Commission decides on the application for a certificate of public convenience and necessity, were adequately considered by the Commission. The Commission,

In re Duke Power Co.

after making adequate findings that Perkins was needed in the sense that its output was required to meet the projected growth in the area, reviewed extensive evidence of alternate sites, fuels, and cooling designs, and concluded that the public would best be served by a site near the load center, by nuclear fuel, and by the existing cooling tower technology. All of these findings were made from competent evidence and all were directed to the primary mandate of G.S. 62-110.1 to the Commission, which is to regulate the expansion policy of electric utility plants in North Carolina to provide for the public need for electricity without wasteful duplication or overexpansion of generating facilities. There was ample evidence to support the Commission's findings as to the appropriateness of the site and the need for the facility. That the Utilities Commission was aware of and concerned with intervenor's legitimate interest in the quality of the Yadkin River is evidenced by the conditions placed upon the certificate which subject construction of the facility to approval by agencies better equipped to deal with environmental projection, i.e. the North Carolina Department of Natural and Economic Resources, the Environmental Management Commission, and the Nuclear Regulatory Commission. Moreover, the order refers to at least four other federal agencies and one other state department whose regulations affect certain aspects of the construction and the record suggests that many more local, state and federal bodies will be involved. The Utilities Commission in this proceeding considered all the factors required by law and issued an order fully supported by the evidence.

Appellant's brief speaks at great length on the questions of the legal rights of riparian owners. It is sufficient to say only that there has been no "taking" of property rights by the proceedings before the Commission. If there is an involuntary taking of any of the property rights of appellant's members, the question of compensation is for the court under the statutes providing for the exercise of the power of eminent domain.

We have considered all of the arguments made by appellant. No error of law has been shown. The order of the Commission, therefore, must be affirmed.

Affirmed.

Judges MARTIN and MITCHELL concur.